Cases No. 09, 1167, Enovsys, LLC, against Nextel Communications and others. Mr. Dunner. Good morning. May it please the Court. There are two infringement issues in the case, but there's a preliminary issue which I'd like to address first, and that is an issue of standing of Enovsys to bring this suit. Enovsys does not dispute that under California law the patents and suit were presumed to be community property, and the facts are sufficiently clear that in fact the patents and suit were at some point community property. But Enovsys' position is that because there was a joint agreement of dissolution and a box was checked off saying there's no community property, and because the dissolution judgment, according to them, incorporated the joint dissolution agreement, therefore the community property was wiped out, and they go a step further. They say that not only was it wiped out, but it is now the sole possession of Mundy Fumacong, who assigned his rights to Enovsys. I submit that they are wrong, and I would like to point out that there's a California case which has language involving a community property issue which directly impacts on this issue, and that's the Lewis v. Superior Court case. And that case dealt with unadjudicated property, a pension of the husband, and the wife insisted that her lawyer had messed up and it was a plaintiff being the wife, was present, existing, and equal to that of her husband prior to divorce, and a judgment which didn't purport to affect that interest will not have the effect of terminating that interest. And that goes to the heart of this issue, because even assuming that the dissolution judgment incorporated the joint agreement, it did not resolve who between the wife and the husband owned the patents and suits. But Mr. Dunner, since the California courts have declined to resolve this question, how can we do so? Your Honor, because there's a standing issue. It goes to the jurisdiction of this court, and this court, however the California, whatever the California courts does in the two appeals that are involved, will make no difference because this court must decide whether it has jurisdiction. And jurisdiction is depending on whether or not an office is standing. And an office's standing is in turn dependent on whether or not Mr. Fumikang has the sole exclusive, had the sole exclusive right in the patents and suit. And I submit the court must look at that issue. We're not attacking the judgment. This isn't a collateral attack on the judgment, but there is a basic issue of standing, which the court always has the power to decide its own jurisdiction. And the California courts cannot decide that question for this court, whatever the California courts rule. I don't necessarily disagree with that, but I'm having trouble with the first part of your argument, which is why this wasn't an adjudication of the property rights issue. You're right. Nobody disagrees that they came into this divorce proceeding and there was community property issue with respect to the patents. But the parties under penalty of perjury said, we have no community assets or liabilities. And the court affirmed that and they approved the petition. Assuming the people were who they said they were, I have a hard time seeing why that didn't adjudicate the issue. The answer is, the most it could have adjudicated is that there was no community property. But we all know there was in fact community property. I don't think that's disputable on the present record. But we don't know what happened. I assume a lot of times parties check we have no community property because they've settled the issue outside of court. If one is in a dispute and the parties agree, well, I'm going to pay you $100,000 for your interest in the house and then they both check off, that issue is resolved. We have no community property issues unresolved. So I'm not sure why I understand that. But on this record, this record does not show that Mr. Fumikang had sole possession of that property. It shows that there was community property, that at most there was a check box saying there was no community property. That doesn't resolve as between the husband and wife who had the community property. We asked the district court for a hearing on that issue. The district court refused to give us a hearing on it. And in fact, Novacis blocked discovery on that hearing. But the fact is, somebody owns that property. They say it's Mr. Fumikang. Well, his name is on it. I mean, he's a named inventor. So I guess the assumption is that it's his in the absence of her having a community property right to have that interest, right? No, wrong, Your Honor. With due deference, it's right that his name was on the patent. But the Lewis court expressly stated that, and here I'll read it, the contention that the omission divested the wife of her interest in the pension due to the fortuity that the pension was in her husband's name and payable to him is rejected by the court. So the fact that the property was originally in his name does not resolve the issue. And the fact that the court entered a judgment of dissolution, what is unadjudicated is who between the wife and the husband owns that property. That's never been adjudicated by the superior court below. That is the unadjudicated question. And that is the question that the cases say, as long as it's unadjudicated, the question can be raised. It's not a collateral attack on the judgment below. And we are not collaterally attacking that judgment. All we're saying is that judgment did not say, as between the wife and the husband, who had that property. And the fact is that community property, the presumption of community property, it's their burden to overcome that presumption by clearing convincing evidence. It's not our burden to overcome it. But that, going back to the first question of the two points that Judge Prost's question entailed, it seems to me, it does seem to me, you may not agree with this, but this is what I take away from the California court cases, going all the way back to the Brown case. It does seem to me that if you have an express adjudication based on a representation that there is no community property, then that terminates the community property rights of the parties. That doesn't say what to do with the property, but it does terminate the community property rights. And that Lewis was not a case like Brown. Indeed, it distinguished Brown on that ground, that Brown had actually had an adjudication of saying that there were no community property rights. Now this short-legged process, this summary procedure that California uses now for quick divorces, does say that checking the box has the consequence, as I read the law, of an adjudication of all the property rights. So it seems to me they're just saying this is the same as a finding of fact in Brown. If that's true, then there isn't any community property, is there? Your Honor, first of all, the view that you just expressed presumes that the joint dissolution agreement was incorporated into the Superior Court's judgment of dissolution. We challenge that. We say it was not incorporated because there is no specific reference in that agreement. Let's assume that we reject that. Let's assume that it is. I submit that we know that this property was community property. We know it was community property at some point. Somebody owns it. Yeah, but you were asserting a moment ago, I think, that it's still community property. Now whatever it is, it seems to me, you may be right that it is something else, and you may be right that she has an interest in it, but it seems to me the California cases, if they tell us anything, they tell us that it's not community property, whatever else it is. Your Honor, you referred to the Brown case. That Brown case has later been interpreted in the Williams case by the Supreme Court of California to restrict it to cases where there's an express adjudication of the property. Well, but that was, if I understand the California law, that was before the development of this process, this quick process by which and by law the property, allegations as to the property are deemed adjudicated. So it seems to me the summary procedure performs exactly the role that the Williams case said that the Brown case covered. But Your Honor, since we know there was community property, and assuming, assuming everything you suggested, that the dissolution judgment said there's no community property, assuming that, the question is who owns the property? And which we know was jointly owned by Fonda Whitfield and Mundy Fomacon. The question is who owns it? Okay, what's your answer to that question? The answer is it didn't resolve, it didn't resolve that question. And the cases say, the Wine Garden case says that community property can only be, the presumption of community property can only be overcome by clearing convincing evidence to the contrary. And Lewis v. Superior says that a judgment which didn't purport to affect her interest, the wife's interest, will not have the effect of terminating that interest. And the question is whose interest did it affect? Assuming it affected something, why do we conclude that if it was wiped out, suddenly her interest is wiped out and his interest is not wiped out? So you're suggesting that we should, we could construe it alternatively that she owns the patent entirely, or at least his share of the patent? No we're not suggesting that, Your Honor. So, back to Judge Bryson's question, so what are you suggesting therefore? We're suggesting that they own it as tenants in common, that they both own it. Because that's what the cases say. Unadjudicated property is owned as tenants in common by the husband and wife because it wasn't adjudicated for her, it wasn't adjudicated for him. That question is unresolved. Well why isn't it adjudicated when the conclusion is both parties have sworn there's no community property? How better can one adjudicate the interests as both parties agreeing that there's no community, there are no community assets? Because that, the answer to that question doesn't tell you, well who owns the property? It's got to be owned by somebody. It's not hanging in the air unattached to somebody. They say it's attached to Mundy Fumicombe and it must be attached to him for them to have standing. We say there's no more reason to conclude that it's attached to him than it is that it's attached to her. We're not suggesting it's her property. To do that we'd have to go back to the Superior Court. That's what those appeals are all about. We're not challenging that and those appeals really don't affect this case. All we're saying is the presumption is in our favor. They've got to overcome it by clear and convincing evidence and they can't overcome it by clear and convincing evidence when it is clear that the judgment of dissolution doesn't resolve as between the husband and the wife who owns the property and the only solution is a, I don't know if you'd call it a Solomonic solution, but they both own it as tenants in common and if they both own it as tenants in common then she had to have been added to the suit as a party plaintiff. She wasn't added to the suit and therefore Mr. Fumicombe has no standing in the case. It'd be a pretty good idea for inventors not to get divorced if you win this case. Well now Mr. Dunner, do you want to... Well that's not the only reason I haven't gotten divorced, Your Honor. Do you want to talk at all about the merits? We'll add a few minutes to your time. Yes, I would. Let's add five minutes more. I would... But let's try and stick to it. Thank you, Your Honor. I'd briefly like to talk about the 159 patent dealing with connecting circuitry. Simply stated, the district court correctly, in the Markman hearing, correctly construed that as a means plus function claim. It's the means to resolve clause and the district court listed a whole batch of elements to structure corresponding to that, one of which was connecting circuitry. At, in the JMO decision, the district court said it didn't matter and it is a fact. They don't argue they have the same connecting circuitry. They argue that they have some, they have some generalized testimony. There are, there is circuitry. But they, there's no allegation that's, that it's the same as what was disclosed and there's no allegation that what they have is equivalent. And we suggest, very simply... When you say it's not the same as disclosed, I just want to be clear, your reference is to the figure in the patent, in the court embodiment. My reference is to the description in the patent which figure two relates to. The description in the patent says that there is, and it's the only description, it says that there's a filter and a switch and the filter and the switch determine whether the satellite frequency is connected or whether the terrestrial frequency is connected. They don't have that and they don't argue that they have it. They don't argue that there's an equivalent. The means plus function, section 112, paragraph 6, requires that the corresponding structure must be the identical structure or its equivalent. They don't have that. And we submit, very simply, that under the circumstances, the district court erred reversibly by holding otherwise. Now they argue that our reference to figure two is new. We had never referred to figure two before. Well, figure two is discussed right in the description we rely on and, in fact, it's the only figure that relates to it and it's the only description that relates to it. Well, I think, in fairness, their argument isn't that you never mentioned it. It's that the claim construction that you didn't argue over and that the court adopted was not limited to figure two, right? I don't know that, your Honor. I mean, I didn't read it that way. I read it, we clearly argued for the connecting circuitry. We clearly argued that there had to be a filter and a switch. We clearly argued that. And, in fact, figure two doesn't add anything to it. Figure two is just the illustration of what is in the description. If you look at the description, it mentions figure two right at the description. If you look in the 159 patent and you look in column five and lines 45 through 61, that's the description, the only description of the filter and switch and it mentions figure two. I don't care whether you look at figure two or not. We clearly argued that there was no filter. And we mentioned in our brief where we argued that. And they also have waiver arguments saying we didn't raise it in 50A. They waive that by not challenging it in their 50B opposition and the district court clearly held that we had raised it as to all elements. And the only case, the principal case you cite for that is that GoMedical Industries? Yes. GoMed. That's exactly right. On the filter and the switch, and I don't want to... If you have it readily at hand, can you point me to where you made the specific argument as to filter and switch? These are components of the connecting circuitry, is that it? Yes, Your Honor. Because I see at A63 and the instruction which picks up on A63 shows up at 2455, I think, something like that. Yeah, 2480A. That's where the means plus function instruction is given. But I didn't see anywhere, maybe I missed it, that you were arguing about filter and switch as being the structure as opposed to more generically just the connecting circuitry. Well, it's at 2121 to 2123 is where we focused... That's your expert's testimony, right? And that's the one antenna to another antenna? This is the point at which the missing structure... The expert is saying that the missing structure is the connecting circuitry. And what struck me there, unless I missed it, is that that was pretty generic in the way he characterized the missing element. Well maybe on rebuttal you'll have an opportunity... If you look at the top of page 2122... He talks about the antennas. But that's what the filter and the switch relate to. You have two different antennas. That is the testimony that we are relying on. Okay, that's fine. That's exactly right. I'm over my time. You are? Is there any quick point that you can make or need to make or can save for rebuttal? Well, the only other point that I would make would be regarding the second patent, but I don't think I can do it in one sentence. All right. Let's hear from Mr. Duvall and we will see what else we need to cover. And would you enlarge Mr. Duvall's time also by the time we've run over? Good morning, Madam Police Department. Let me begin with the standing issue. It's undisputed that if the judgment of dissolution adjudicated that the patents were not community property, then there's nothing for the district court to have done and nothing for this court to do as well. We hear for the first time today in the argument that, well, if it is an adjudication that there was no community property, then there's still something to be decided. Who actually owns this property? That argument wasn't made before and the reason is because the evidence is clear. If it's not community property, it's separate property. Separate property of whom? It's separate property of the party that either has title to it or possession of it. The undisputed facts are that Mr. Fumicant had title to the patents when the applications were filed and when the patents were issued. Let me ask you, I guess you're a California lawyer, so you may understand this. I certainly don't, although I've made an effort in preparing for this case. But what happens in California law in exactly this kind of situation? There must be thousands of cases in which you have an adjudication, whether in the summary procedure or otherwise, in which the parties represent that there's no community property. But of course there's property, which was community property. I mean, suppose that you have a husband and a wife and a house, which they've lived in for years. What happens when they check the box, no community property? Who owns the house and is there clear California law to that effect? Because I couldn't find anything that actually gave the answer to that question. Well, yes, there is, Your Honor, and we cited the law. I'll explain how it works. Well, but of the cases that the parties cited, I didn't see anything that answered that question. What you answered was the first question, which you just recited as, you know, what you dispose of by way of community property rights when you check the box. There's law on that, and that I felt comfortable that I understood. It's the second half, the part that you say was raised for the first time here, that I thought there was a vacuum. Let me address that. Sure. First of all, Your Honors, parties during a marriage can take any piece of property that is community property and while they're married declare it to be separate property of one party or the other. That's very commonly done. So the fact that there is a marriage and that the marriage has community property doesn't mean that there isn't also separate property. In addition, parties may bring separate property into the marriage, and that property may grow and transform. In this case, for example, the basic conception of the patent took place before the marriage. That's in the record. It's page 1404 of the transcript, I believe, Mr. Fumicong's, 404, Mr. Fumicong's testimony, where he talks about conception in March of 1995. From that point forward, the question about whether there was any community property involved would be whether the community funds were spent on the application or whether it was just separate property. To use the example of the house, what would happen in such a case? Would they have to execute a piece of paper saying, despite California law, this is the wife's house? No, Your Honor. If the property, we'd look at the title of the property, because title gives rise to a presumption of ownership. If title is in the name of one spouse, it would be deemed at that point to be the separate property of that party. But let's say it's initially entitled or that it isn't divided up so that the house is the property of the husband and wife. It has to be one of three things. Title either has to be in the name of the husband individually, the name of the wife individually, or the name of both. Whatever that is, that will be the nature of the property arrangement. But if it's both, then presumably it would become joint tenants, tenants in common. Well, the title would say that it is a joint tenancy or tenants in common, exactly, and that would remain thereafter. But let's say the title is in the name of husband and wife and they agree between themselves, no, this will be after the divorce or after I die, or whatever, that this is the wife's property. Do they need to change the title or have a document between them? Yes, absolutely. If the title is in the name of both parties, husband and wife, and they've decided that, well, we want this to be the separate property of one, then they will have to execute an instrument to do that. Otherwise, it won't take place. It will still remain the property of both. So here we have a piece of property where there is no title. But we – who then – and then the property – he assigns whatever he has to a company. But there's nothing to reflect some change in what the presumption of joint ownership. Well, Your Honor, let me back up. The presumption of joint ownership applies to during a dispute, a contested dispute over whether property is or is not community property. There is no evidence that the patents were ever community property, none whatsoever, no evidence that any community funds were ever spent in prosecuting these patents. So this presumption of community property doesn't mean, oh, yes, they were definitely – it was definitely community property at some point. But he owns the company. So is – there's no presumption that that company is community property? No, Your Honor. Well, first of all, the patents, when they were – at the point of the marriage was ongoing, there was one patent that was issued and there was applications. The patents were in the name of Mr. Fumicong. There was no assignment to the two of them. When the patents were issued, it was issued in his name and his co-inventor. But he assigns it to the company that he forms. Thereafter. That he and another person form. Right. Let's assume that we conclude that – let's assume that it was community property, at least at the time of the marriage. During the marriage? Yes. Okay. If we assume that, then we know that at the time of the – the joint petition was filed that the parties had agreed that it would not be community property. That it would be the separate property of one party. And there is no dispute about whose separate property it was. And we know that from possession, title, and control. Mr. Fumicong was the one that prosecuted the patents. He was the one that had them issued in his name. He was the one that then assigned them to Anophis. There's literally not a scrap of evidence that this was the separate property of Ms. Whitfield. Let me pursue, if I may, this question. The company now owns the patent. Yes. There's no presumption that the shares of the company are community property? No, Your Honor, because the company itself was formed after the marriage. So the presumption of community property arises with respect to property. After the termination of the marriage or after the beginning of the marriage? Yes. I believe even after the termination of the marriage. Okay. Yes. There's no presumption that the – the presumption relates to property that's acquired during the marriage. And, again, it's a legal presumption, and then you take evidence. It doesn't decide anything. The evidence is was it the separate funds that were used to acquire the property or was it community funds that were used to acquire the property when there's going to be a debate about it. So this presumption literally plays no role once they sign that petition. Either it was community property and they agreed it would be separate property or it was never community property at all. We don't need to decide that. All we know for certain is that on the date they signed the petition, it was not community property. At that point, it became indisputably the separate property of Mr. Fumicon. Well, that – but that conclusion is based on our accepting that some re-adjudications necessarily adopt and, therefore, adjudicate what the party's representations are. Yes. Right? And what's your best case for that? The Brown case, Your Honor. In the Brown case, there was a complaint, and then there was a decree, and the decree made no mention of community property, no mention of allocated property rights. And the California Supreme Court held that the decree is deemed to be – to provide the relief that was stipulated to in the – in this case, it was a default judgment. It was provided for in the complaint and then stipulated to. Here, in addition, we've got the statutory law. The law that's at issue here includes the forms themselves. The forms are part of the law. The language of the forms constitutes governing law under California law. The forms do not provide that the – that there will be any listing of any property in the judgment. The judgment doesn't identify property at all. The statute then says that that judgment constitutes a final adjudication of the property rights, and the judgment itself simply references the petition. Therefore, it necessarily is the case that that must be an adjudication that there is no community property. Otherwise, what's it adjudicating? Or in the case where the parties check the box and say, we have community property and we've divided it as follows. Well, it's adjudicating the divorce. It's ultimately granting the dissolution of the marriage. But the statute says it adjudicates the property rights, and it says that this judgment form must be used. You cannot – there's no place – Your position is not, is it, that she or a spouse in this circumstance couldn't come up later and contest that document. Your view is just that they can't contest it in this proceeding. For example, if this spouse feels aggrieved that they didn't know what they were signing away or whatever, you acknowledge there is recourse for that. Absolutely, Your Honor. That's what the law provides, that if there is a mistake or trickery or fraud, either spouse can go back to the court and seek to get the judgment modified. And that's the relief that must be followed. And it must be the spouse that does that under California law. It can't be someone else that does that. Now, let me see if I'm – I want to make sure I'm on sound footing here with respect to the – as much as I can be – with respect to California law. Your contention – well, first of all, let's go back to Brown. Brown, I thought, was a case in which the court actually made an adjudication with respect to – a formal finding with respect to the allegation and the complaint about the absence of community property. No, Your Honor. Here's what I'm reading from Brown. The Brown court says the court, on evidence produced in support of the allegations of the complaint, which included the allegation in question, made the interlocutory decree above, which recited that all the allegations of the complaint were sustained by the testimony and were true. And I thought that was, in effect, saying – indeed, it appears directly to say that those were findings made by the court, which is what gave rise to the distinction of the Brown line of cases in Williams that Mr. Dunner alluded to, where Williams refers to the Brown line of cases as being limited to cases in which the record shows an express finding on the allegation as to the property. And that's what leads Mr. Dunner to say, well, of course, Brown then doesn't apply because we don't have an express finding here. But so far, he's right about that, right? Not quite, Your Honor. Not quite. That's not the way the summary dissolution law works. Well, I understand. We haven't gotten to summary dissolution yet. We're just talking about the law in 1950 after Williams. Just to be clear, Brown did not say in the decree, we find that there's no community property. There was no statement about community property one way or the other in the decree. She made a complaint. In her complaint, she says there's no community property. Correct. And then the court says the allegations of the complaint are sustained by the testimony are true. That sounds like a finding as to the state of the community property. Well, it's an adoption of the complaint. But, I mean, there was no trial. There was no default of judgment. No, no, of course. Right, right. But it seems to me that's how the Williams court gets around Brown. Brown was a problem for the Williams court. They get around it by saying, well, those cases are all finding cases, right? You know the sentence of Williams I'm talking about. Yes, yes. Now, your argument has to be, if I understand correctly, that when you get to the summary process, what you have is the full equivalent of a finding because you have something which doesn't require a finding, but the law makes it an absolute adjudication based only on the representation of the party. And you say that, if I understand your argument correctly, doesn't fall within the Williams characterization of the Brown rule. It has to be that way. Otherwise, summary dissolution becomes meaningless. All right. If we don't agree that this judgment works because it's a mandatory form. You can use no other form. If we don't agree it works, then that means summary dissolution never works in California law. It hasn't worked for 20 years, and the millions of adjudications are pointless. Nobody knows who owns what property. Okay. One more question about California law, and then I'll let you go. Where would I look in order to find support for the proposition that once we've decided, if we accept the first part of your argument that community property no longer exists, in a summary adjudication situation where the box is checked that says there's no community property, where do I go to find the rule that we then look to, for example, whose name is on the title of the property? Is there a ready source for that principle? There are ready sources. It wasn't an issue that was raised. It wasn't addressed directly in the brief. But one case that does address that is a 2008 California court of appeal case that we do cite, In Ray Marriage of Brooks and Robinson. I'm sorry, what's the name of the case again? In Ray Marriage of Brooks and Robinson. Brooks and Robinson? Yeah. It's on page 16 of our brief. Okay. And there's a quote there that title of the property was taken solely in Robinson's name and that that removes the property from the general presumption of community property and made the property presumptively Robinson's separate property. That's an example of that. But the proposition is generally that you look to possession, control, and title to determine ownership. They're broadly in California law. Thank you. Okay. All right. Let's turn to the merits. Yes. Let me start with the 159 patent. And the first point to make, Your Honors, is that before the jury verdict was entered, Sprint Nextel never raised the issue of the connecting circuitry should have a different interpretation, a narrower interpretation. In their gray brief, they say, well, of course we didn't raise it because the court got it right in its jury instruction. And then they quote from page 1488 of the reporter's transcript, and they include that in the joint appendix, which is at 2488. But they only read the first sentence. They don't read the next sentence of the instruction. And the next sentence of the instruction makes clear that the court is not adopting it. You're talking about the next sentence that we don't have? Exactly. Am I correct in assuming that that picks up back at essentially the language on A63 from the claim construction that the court was just going to move on to citing the claim construction? It does better than that, and I'll read it for you, Your Honor. It says, The court has found that the structures in the patent specification that perform that function are transceiver, connecting circuitry, CPU, satellite receiving means, terrestrial receiving means, decoders, and temporary store. You must use my interpretation of the means plus function element in your deliberations. A clear and direct instruction that, yes, the law is you look to the specification, but here's how I've interpreted it. You must use my interpretation. But what you just read to us is not in the joint appendix that you provided. That's right. Would you mind providing maybe something in its entirety? I mean, we don't want to go back and forth, but maybe just so we can have that before us. Yes, we can provide the entire statement. The entire claim. Instructions. The entire instruction. Yes, yes. Thank you. And then I'll point out that the court then on page 1493 said it again, said exactly that same thing. They make it very clear. Do we have 1493? No, you don't have 1493 and 1494. I should say 1494. So when you look at the record, you'll see it in those two places. Okay. So would you consult with the other side as to rounding out whatever it is that we need? Yes, we will. Now let's turn to the claim structure itself. If we look at Figure 2, Figure 2 suggests only that there be connecting circuitry, which is what the court ruled, or at most that the connecting circuitry connect the satellite-receiving means and the terrestrial-receiving means. There's no recitation in Figure 2 that the connecting circuitry must include a filter and a switch. The filter and the switch are mentioned solely in the written description, and it's preceded with the word may. That is, the connecting circuitry may include a switch and a filter, which means, of course, that it may not include it. That's what the specification says. There's nothing in the specification that says that this connecting circuitry must include a switch and a filter. And, of course, the switch and the filter wouldn't be necessary to perform the function that's at issue. Yeah, but it seems to me, when we're reviewing a means-plus-function claim, I mean, there's a need for some specificity with respect to the structure identified, is there not? I mean, how else can you have the structure or if it's equivalent? Is your claim that this is an equivalent structure or that the definition is so broad that it could include anything? Well, the court's definition was just connecting circuitry, but it has to be connecting circuitry used to perform this function. It has to be used as part of that. Your argument really is, is it not, that they just didn't request that the court get to the level of specificity with respect to the components of connecting circuitry in discussing the means-plus-function structure? There's two points. That's the first point, yes, Your Honor. They never made that request at all. It was never part of the court's definition. And, therefore, we did not go on and try to put in evidence of a switch or a filter, but we did put in evidence that meets Figure 2. We put in evidence, Dr. Rose, that the connecting circuitry connects the satellite-receiving means, the terrestrial-receiving means, the transceiver, and the CPU. So your position is, even if it wasn't waived, you had sufficient evidence with respect to a more narrow definition? Absolutely. Absolutely. The only thing we wouldn't have evidence of, we didn't put in evidence of a switch and a filter, which is, again, this optional element. But with respect to that, and that's found. Well, but to pick up on Judge Post's question, I mean, since this is 112-6, there's a little different rule, of course, as you know, that applies in that setting, where if they had said, well, the structure we think is the right structure is the filter and the switch, then you either have to have the filter and the switch are equivalent, right? That's right. But your point there is, they didn't ask for filter and switch as the appropriate structure. They asked for connecting circuitry. At that level of generality, you weren't bound to come up with filter and switch are equivalent. That's right, exactly. And, in fact, to cross-examine their expert, which is in the joint appendix. But you were bound to come up with connecting circuitry. I'm sorry? But you were bound to come up with connecting circuitry. Yes, exactly. And some of the testimony that's in the record, for example, A-1231, Dr. Rose testified, so all of these things are all interconnected, and what interconnects them is connecting circuitry. And then to make it clear, question. All the components that are used inside the handset to perform this global location, all those electronic components are connected with connecting circuitry. And he's referring there to the six other components that are identified as part of the structure. What about the waiver on the waiver argument? Well, that relates to this JMOL issue, Your Honor. But with respect to this one, it was clearly raised below, and I'll read from Dr. Oh, I'm sorry. Was Mr. Jenner making that argument with respect to the 461? No, I think it was with respect to our JMOL. We have two different waiver arguments. We've got a JMOL argument, which they didn't move for JMOL, and the other one is that they never raised this as a claim destruction issue. And that isn't affected by the JMOL, I take it? That's correct. And that's, just for the record, is in docket number 424, page 2, where we make directly that argument. So let me then turn to the But you were going to say that you did, in fact, raise this? I didn't hear what you said. Yes, we did raise the claim destruction argument. All right, but you didn't raise the default by virtue of not having made a Rule 50A motion. For one of the two, the one they point out, I've forgotten whether it was 461 or 151. It was the first one. 151, yes, that's correct. We did it for the 461. Okay. So the 50B argument is off the table on that path? Well, provided that we had to have raised it below, and the case seems to say so. That's correct. Now, if there are no more questions about the 159 and its interpretation structure, I can turn to the 461 briefly. The issue on the 461 patent is whether preauthorized must be something that's done on a single mobile phone by mobile phone basis, or instead, can preauthorization be done as to a group of phones at the same time? This issue was not raised by Nextel or Sprint with respect to claim destruction. They filed a motion for summary judgment that argued this point in December of 2007. Three weeks later, they filed their claim construction brief and asked for a construction of preauthorization that did not assert that it had to be preauthorization by individual phone as compared to group. And they probably did that because they realized at the same time they moved for summary judgment on infringement, they moved for summary judgment on invalidity, and it was going to undermine their invalidity case. The court then considered the arguments of both sides and agreed with Sprint and Nextel's construction, adopted their construction of preauthorization. So as of that point, Sprint and Nextel had abandoned the argument that preauthorization had to be done on an individual phone basis. They'd asked for a specific instruction that the court granted. And then from that point forward, we went forward with expert reports and trial. They never raised or asked the court to construe this preauthorization to require this on an individual basis. Again, that constitutes a waiver. They can't raise or modify this claim construction position for the first time on appeal. They never asked for a claim construction that included this. They asked for a different one, and the court gave them their instruction. Next, with respect to the claim construction issue, the claim language itself makes no suggestion that preauthorization must be done on an individual basis versus a group. If we start with the language of Claim 28, in the last element, this is a system claim, it says the system able to use the location access field of a first profile, and then we're getting to the relevant portion, it says, to deny the location information of the first communication resource to the preauthorized resource. There's no statement there or suggestion that the preauthorized resource must be done on an individual basis versus on a group basis, nothing whatsoever. If we turn to Claim 11, they say, well, Claim 11 does use the phrase, the mobile remote receiving unit. But as we point out in our brief, it's using the mobile remote receiving unit to refer back to the antecedent basis, a mobile remote receiving unit, which means one or more mobile remote receiving units. And therefore, the claim language on its face is saying that this is, with respect to not a particular single mobile remote receiving unit, but could be one or more mobile remote receiving units. So that's the claim itself. There's nothing in the claim language, the ordinary meaning, that narrows it to a single individual phone that must be authorized, preauthorized individually, that they can't be done on a group basis. And if we look then at the specification of prosecution history, we see again nothing that narrows it. They point to a preferred embodiment, but even in that preferred embodiment, it doesn't say that it must be done on an individual basis.  But nothing there says that the special code can't apply to multiple phones or can't be used for a group of phones. Nothing in the prosecution history suggests that the invention is being narrowed to the prior art. They all did groups of phones. Ours is individual preauthorization. Nothing like that. There's no suggestion one way or the other about how the authorization takes place, whether on an individual phone basis or by a group of phones. Can I just ask you another before your time runs out? Just you mentioned in past as you were going through the scenario about the validity claims. Whatever happened to it? Were there validity claims in this case? Yes, they were asserted. They were adjudicated in our favor, and they have not been appealed. And the jury? Because I don't think I saw the jury. The jury dealt with the validity issue? Yes. Okay, I didn't know. Yes. Well, the court dealt with the anticipation argument, said as a matter of law there's no anticipation. The jury dealt with the obviousness issue. And then there was an indefiniteness issue that the court dealt with also. And all those are in the record. Are there no further questions? Thank you, Mr. Dovell. Mr. Dunner, we let Mr. Dovell go into issues that you hadn't raised, so we had a little time to respond to what you feel you need to respond to,  Okay, thank you, Your Honor. I'd like to start with the standing question. Judge Bryson, you asked where you might find a case that says that the name of the person is critical in terms of the evaluation. And Mr. Dovell cited Brooks v. I forget the name of the second case. That deals with... Robinson. I think it was Brooks Robinson. Brooks Robinson, the third baseman for the Baltimore Orioles? Yes. I think so, except there's an N between the two. Right, right. The fact is that case doesn't help in OVCIS. That case involved an agreement between the parties that one party, one of the spouses, would have title rather than the other. So that case doesn't help at all. And also Mr. Dovell said that the presumption plays no role once they sign the agreement. I will go back to my point, the point I made in opening, and that is that what did, assuming it was incorporated by reference, what did it resolve? Somehow, someway, somebody has to own that patent. And the Weingarten case clearly says there is a presumption and it may overcome only by clear and convincing evidence. And these cases dealing with an express finding, as in the Brown case, express finding of what? There was no express finding as to who owns it. And they've got the burden to show that Mr. Fumicombe had sole title to this. But if Brooks against Robinson doesn't give us the answer to the question, my question is do you have a case that tells us what the California law is? Now, with respect to the following question, this is a narrow question. That is, if we agree with Mr. Dovell that the effect of the summary adjudication was to terminate any community property rights, the question then for us, the next question, is the one you raised in your original argument, which is what then? Does the patent become tenancy in common in the absence of some evidence of a disposition between them? Or, as Mr. Dovell says, does it revert to the named party or the party that brought the property into the marriage? The name titled property. I think the best case is the Lewis case. The Lewis case basically says that... I don't think Lewis was a case in which there was actually an adjudication that this is not community property. I'm starting with the assumption that you're adjudicating at the outset that it's not community property, so the question is what then? Because Lewis was a case in which the pension, if I recall correctly, was left out of any adjudication. I know you argue that there wasn't an adjudication here, but let's assume that we conclude that there was. Then the question is what now? And what I'm asking is, I mean, there are 30 million some odd people that live in California. Surely this case, this issue must come up all the time. You have parties that check box the box that says no community property, and then you have to figure out what to do with the house. The answer very simply is, Your Honor, I don't have a better case than Lewis on this issue. I'm relying at this point, at least in good part, on common sense. And common sense tells me that if a court, using your hypothetical, the court has adjudicated that there's no community property, the property doesn't disappear. We know the property exists. Lewis is relevant for the proposition that the fortuity that it happened to be in the name of one of the spouses than the other is irrelevant. And that, I think, carries over to our situation. The fortuity that it's in his name is irrelevant. We know it was community property at some point. And the question is, if there's an adjudication that it's no longer community property, who owns it? I suggest the analogy to Lewis is a good one. And that is, in that case, they found that the parties remained tenants in common to such unadjudicated property because the court couldn't say, as between the husband and the wife, which one owned it. There was as much reason to argue that the wife owned it as the husband and vice versa. We're not suggesting that she owns it. But we are suggesting that he doesn't own it alone. He owns it as a tenant in common with his former wife. Now, going to the 159 patent and the question of connecting circuitry, I would note, Your Honors, that in the Markman ruling and as well as in the jury instructions, the court expressly referred to the structures disclosed in the specification. And the court then talked about the various elements, one of which was connecting circuitry. The only place in the specification is the place that I directed the court to before, which, as I recall, was in Column 5. And Figure 2 is expressly mentioned in Column 5. And Figure 2 doesn't really add anything to Column 5. But the fact is that I think it was clear to all what we were talking about. It was clear to the court. It was clear to them. And I submit that under the circumstances, it should be not a deficiency that they could raise even if they preserved it. And they didn't preserve it because they failed to raise it in 50B. I would note from their brief on Page 35, it says, Sprint argues that Anovis didn't contend that the accused IDEN devices includes the exact same connecting circuitry depicted in Figure 2. Correct, but irrelevant. Correct. They didn't say they had the same circuitry and they didn't say that they had equivalent circuitry. And it was clear to them. It's clear to everybody what that circuitry was, which is described in one small place in the patent. I think I'm running out of time. In fact, I have run out of time. Is there one last word that you need to add of any new issues that were raised by Mr. DuVal? The only other point is on the preauthorized issue. And I think probably I had best rely on my brief for that because I don't want to overextend my welcome to the board. We will take the case under submission. Thank you, Mr. DuVal and Mr. Dunner.